# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **NICKI LEVENDIS** | **CIVIL ACTION NO**: **2:19-cv-1557** |
| v. | **JUDGE LANCE AFRICK** |
| **JAZZ CASINO COMPANY, LLC, et al.** | **MAGISTRATE JUDGE DOUGLAS** |

## MEMORANDUM IN OPPOSITION TO JAZZ CASINO COMPANY, LLC'S MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

Plaintiff Nicki Levendis ("Dr. Levendis") respectfully submits this Memorandum in Opposition to Jazz Casino Company, LLC's ("Jazz Casino") Motion for Summary Judgment and its Memorandum of Law in support of the same. Dr. Levendis is able to prove all three elements of the Louisiana Merchant Liability Act.  However, genuine issues of material fact exist, making summary judgment inappropriate. For this reason, and those explained below, Jazz Casino's Motion for Summary Judgment should be denied.

### I.      RELEVANT BACKGROUND FACTS

**A.     Dr. Levendis's Fall**

On January 21, 2018, Dr. Levendis was playing poker at Jazz Casino. Dr. Levendis did not consume any alcoholic beverages while she was at Jazz Casino that evening.[1] She played poker for a few hours, and then left the poker table to walk to one of Jazz Casino's restaurants.[2] Dr. Levendis was wearing the same kind of high heeled shoes she has worn all of her life.[3] As she was walking

---

[1] *See* Exhibit 1, Excerpt from the Deposition of Nicki Levendis, pp. 37-38.
[2] *Id.*
[3] *See* Exhibit 2, Excerpt from the Deposition of Nicki Levendis, p. 42.

past the Masquerade Room toward a dining room, she slipped and fell on water and lemon on the floor.[4] Dr. Levendis fell hard and fast.[5] She hit her face and arm on the floor, instantly breaking her nose and elbow.[6] She did not trip, stumble, or lose her balance.[7] She did not twist her ankle.[8] She fell so quickly, she initially did not know what caused her to fall.[9]  After she sat up, she looked around and saw a slice of lemon and water on the floor where she fell.[10]

A cocktail waitress working at Jazz Casino stopped to help Dr. Levendis.[11] She brought Dr. Levendis napkins for her bloody lip and water.[12] The cocktail waitress saw "a piece of fruit" on the floor "a foot or two away from" where she saw Dr. Levendis lying.[13]

In the Guest Incident Report, Dr. Levendis stated that she slipped and fell on water and lemon on the floor.[14] Noticeably absent from the Guest Incident Report is a suggestion that Dr. Levendis twisted or otherwise injured her ankle when she fell.[15]

**B.**    **Jazz Casino's Investigation Determined that Dr. Levendis Slipped and Fell on Water and Lemon on the Floor**

Jazz Casino employs report writers to document incidents that occur on the premises. Kirtrell Renfro, a former report writer, prepared the incident report of Dr. Levendis's slip and

---

[4] *See* Exhibit 3, Excerpt from the Deposition of Nicki Levendis, pp. 43-52.
[5] *Id.*
[6] *See* Exhibit 4, Excerpt from the Deposition of Nicki Levendis, p. 28.
[7] *See* Exhibit 3, Excerpt from the Deposition of Nicki Levendis, pp. 43-52.
[8] *Id.*
[9] *Id.*
[10] *See* Exhibit 3, Excerpt from the Deposition of Nicki Levendis, pp. 43-52.
[11] *See* Exhibit 5, Excerpt from the Deposition of Sharon Guillot, p. 18.
[12] *Id.*
[13] *Id.*
[14] *See* Exhibit 6, Excerpt from the Deposition of Kirtrell Renfro, pp. 36-38 and Exhibit 1 to Ms. Renfro's Deposition Transcript, Guest Incident Report.
[15] *Id.*

fall.[16],[17] Ms. Renfro's initial synopsis of the incident stated that Dr. Levendis "slipped and fell on a slice of lemon and water while walking past Masquerade Night Club."[18] The "executive brief" in Ms. Renfro's report states that Dr. Levendis "slipped and fell on a slice of lemon and water while walking past the Masquerade Night Club."[19] Ms. Renfro also took pictures of the water and lemon on the floor and attached the pictures to her report.[20]

      Ms. Renfro's report, which was prepared shortly after she investigated the scene of the accident, does not doubt that Dr. Levendis slipped and fell on lemon and water. Ms. Renfro's report does not state that the lemon and water appeared undisturbed. To the contrary, Ms. Renfro's report confirms that Dr. Levendis slipped and fell in the water and lemon, and she included a photo of the lemon and water in the report.



---

16                            The information redacted throughout this Memorandum was designated by Jazz Casino as "confidential," pursuant to the Protective Ordered agreed to by the parties and entered by the Court.  *See* R. Doc. 41. An unredacted version of this information was attached to a Motion to File Documents under Seal which was filed contemporaneously with this Memorandum in accordance with the Protective Order. Dr. Levendis reserves her right to object to Jazz Casino's designation of this information as "confidential," and to seek declassification of this information at a later date.

19 *Id.*
20 *Id.*

**C.**     <u>**Jazz Casino's Failed to Preserve Video Evidence Relevant to this Case**</u>

After Dr. Levendis's slip and fall, Ms. Renfro reviewed the footage from the camera recording the area in which Dr. Levendis fell.[23]  Ms. Renfro first saw a man walking by himself.[24] The man was carrying a drink.[25] She believed it was possible that he spilled his drink—the water and lemon—in the walkway where Dr. Levendis fell.[26] Ms. Renfro then recalled seeing a couple walk through the area in which Dr. Levendis fell.[27] Ms. Renfro believed that this couple also could have been responsible for spilling a drink on the floor.[28] The couple stopped to point out the spill on the floor just moments before Dr. Levendis fell.[29] Ms. Renfro could not remember precisely how much time passed between the time the man possibly spilled his drink and the time Dr. Levendis fell.[30]

Jazz Casino only preserved approximately 20 seconds of video footage before Dr. Levendis's fall.[31] The footage of the man walking by and possibly tripping and spilling his drink was not preserved.[32] Ms. Renfro could not explain why the footage was not kept.[33] Ms. Renfro confirmed that Jazz Casino was the only party in control of the footage and it selectively chose to only preserve 20 seconds of video before Dr. Levendis's fall.[34]

---

[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] *See* Exhibit 9, Deposition of Kirtrell Renfro, pp. 52-57.
[32] *Id.*
[33] *Id.*
[34] *See* Exhibit 10, Deposition of Kirtrell Renfro, p. 61.

**D.   Dr. Levendis Requested that All Evidence be Preserved**

On March 23, 2018, Dr. Levendis's counsel sent a letter to Jazz Casino asking that the casino take all "immediate action to preserve ALL evidence that is or could be related to this matter."[35] The letter was sent by certified mail.[36] Jazz Casino failed to preserve all evidence related to Dr. Levendis's slip and fall.  Jazz Casino did not preserve the footage of the man possibly spilling his drink before a couple walked through the same area and pointed to a spilled drink on the floor.

**E.   Jazz Casino's Surveillance Retention Policy Suggests that Upwards of 15 Minutes of Footage Should Have Been Preserved**



---

[35] *See* Exhibit 11, Declaration of Claire Pontier and Exhibit A to the Declaration, Preservation of Evidence Letter and Return Receipt.
[36] *Id.*

████████████████████████████████████████████████████

████████████████████████████████████[38]

**F.**   **No Jazz Casino Employee was Assigned to Clean the Floor Where Dr. Levendis Fell**

████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

████████████

Sundays are usually busy, high volume days at Jazz Casino.[45] ███████████████████

██████████████████████████████ Nevertheless, the EVS employee closest to the public

walkway where Dr. Levendis fell spot checked the floor only two, maybe three times from 3:00

p.m. until the time that Dr. Levendis fell at around 6:38 p.m.[47]

---

█████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

[45] *See* Exhibit 16, Excerpt from the Deposition of Kirtrell Renfro, p. 29.

[47] *See* Exhibit 18, Excerpt from the Deposition of Quinton Martin, p. 16.

All employees of Jazz Casino are responsible for reporting spills in public passageways.[48] ████████████████████████████

████████████████████████████████████████

## II.   LAW & DISCUSSION

### A.   <u>Summary Judgment Standard</u>

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[51] If the evidence presents a real factual dispute between the parties, "relevant to a legal claim, then they must be afforded a trial."[52] Summary judgment is improper if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party."[53] Evidence submitted with the motion and opposition and all reasonable inferences drawn therefrom are to be construed in favor of the non-moving party.[54]

The moving party who motions for the summary judgment has the burden to show there is no genuine issue of material fact in dispute.[55] Furthermore, it is then the burden of the non-moving party to show the existence of a genuine issue of fact for trial. [56]

---

[48] *Id.*

████████████████████████████████

[51] Fed. R. Civ. Pro. 56(c); *See also, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).
[52] *Ecology Center of Louisiana, Inc. v. Coleman*, 515 F. 2d 860, 864 (5th Cir. 1975).
[53] *Anderson*, 477 U.S. at 247.
[54] *Lincoln General Ins. Co. v. Reyna*, 401 F. 3d 347, 349 (5th Cir. 2005), *citing Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).
[55] *Id.*
[56] *Id.*

**B.**     **La. R.S. 9:2800.6 – the Louisiana Merchant Liability Statute**

La. R.S. § 9:2800.6, the Louisiana Merchant Liability Act, establishes a plaintiff's burden of

proof in a slip and fall claim against a merchant, which provides:

> In a negligence claim brought against a merchant by a person
> lawfully on the merchant's premises for damages as a result of
> an injury, death, or loss sustained because of a fall due to a
> condition existing in or on a merchant's premises, the
> claimant shall have the burden of proving, in addition to all other
> elements of his cause of action, all of the following:
>
> (1) The condition presented an unreasonable risk of harm to
> the claimant and that risk of harm was reasonably foreseeable.
> (2) The merchant either created or had actual or constructive
> notice of the condition which caused the damage, prior to the
> occurrence.
> (3) The merchant failed to exercise reasonable care.[57]

The plaintiff has the burden of proving all three elements of the Merchant Liability

Statute.[58] For the reasons explained below, Dr. Levendis will be able to prove all three elements of

the Merchant Liability Statute at trial. Summary judgment should, therefore, be denied.

**C.**     **The Water and Lemon on the Floor Created an Unreasonable Risk of Harm**

A merchant owes a duty to those who use its premises to exercise reasonable care to keep its

aisles, passageways, and floors in a reasonably safe condition.[59] This duty includes a reasonable

effort to keep the premises free of a hazardous condition which might give rise to injury or

damage.[60]  Spills can present a foreseeable, unreasonable risk of harm.[61] "In the context of a slip

and fall case, a hazard is shown to exist when the fall results from a foreign substance on the

---

[57] LA R.S. 9:2800.6 (B).
[58] *See Rodriguez v. Wal-Mart Louisiana, LLC*, 2018 WL 3303419 (E.D. La. July 3, 2018) at *4 (*citing White v. Wal–Mart Stores, Inc.*, 699 So.2d 1081, 1086 (La. 1997)).
[59] *Barton v. Wal-Mart Stores, Inc.*, 97-801 (La. App. 3 Cir. 12/10/97); 704 So.2d 361, 364.
[60] La. R.S. 9:2600.6, *Robinson v. Wal-Mart Stores, Inc.*, United States District Court for the Western District of Louisiana, Lafayette Division, Civil Action No. 15-1783 (09/15/2016); 2016 WL 521711.
[61] *See e.g. Marine v. Wendy's International, LLC*, 2019 WL 1508982 (E.D. La. April 5, 2019) at *3.

floor."[62] A lemon on the floor is a foreign substance and, thus, a hazardous condition.[63] Importantly, factual disputes regarding the condition of a floor are material to a determination of whether a condition existed which created an unreasonable risk of harm.[64]

In *Lewis v. Jazz Casino Company, LLC*, the plaintiff was injured when she slipped and fell on a smushed grape near the Masquerade Night Club at Jazz Casino.[65] The plaintiff testified that "after her fall, she saw "little white stuff" on the floor.[66] A nearby Jazz Casino employee stopped to help the plaintiff, and apparently told her that she slipped on a smushed grape.[67] The plaintiff testified that she did not know how the grape got on the floor.[68] She did not know how long the grape was on the floor.[69] She did not know if a Jazz Casino employee put the grape on the floor.[70] A Jazz Casino employee denied observing "any fruit on the ground," or "any other condition that would cause the slip."[71] The trial court and the appellate court agreed that the plaintiff was able to establish that an unreasonable risk of harm existed.[72]

Dr. Levendis has positively established that her accident was caused by a condition that presented an unreasonable risk of harm. As Dr. Levendis stated during her deposition and in her Guest Incident Report, she slipped and fell on lemon and water on the ground.[73] Jazz Casino's report writer, Ms. Renfro, determined that Dr. Levendis slipped and fell on water and lemon on the

---

[62] *Saucier v. Kugler, Inc.*, 628 So. 2d 1309, 1312-13 (La. App. 3 Cir. 12/8/93).
[63] *Id.*
[64] *See e.g. Marine v. Wendy's International, LLC*, 2019 WL 1508982 (E.D. La. April 5, 2019) at *4.
[65] *Lewis v. Jazz Casino Company, LLC*, 2017-0935, *3-4 (La. App 4. Cir. 4/26/18); 245 So. 3d 68, 71.
[66] *Id.*
[67] *Id.*
[68] *Id.*
[69] *Id.*
[70] *Id.*
[71] *Id.* at 72.
[72] *Id.*
[73] *See* Exhibit 6, Excerpt from the Deposition of Kirtrell Renfro, pp. 36-38 and Exhibit 1 to Ms. Renfro's Deposition Transcript, Guest Incident Report.

ground.[74] Ms. Renfro took a picture of the water and lemon on the ground and attached it to the Guest Incident Report and the incident report she prepared.[75] A cocktail waitress at Jazz Casino witnessed the "piece of fruit" on the floor where Dr. Levendis fell.[76] Jazz Casino's surveillance agent also believed Dr. Levendis slipped and fell on water and lemon spilled from someone's drink.[77,78]

The notion that Dr. Levendis fell, because she was walking in high heeled shoes and twisted her ankle, was invented by Jazz Casino after Dr. Levendis made her claim. The pre-litigation record is void of any reference of Dr. Levendis twisting her ankle due to her shoes. All of the pre-litigation reports and videos show that Dr. Levendis slipped and fell on lemon and water on the floor. Dr. Levendis did not stumble or trip.[79] She did not lose her balance.[80] She was wearing the same kind of shoe she has worn all of her life.[81]

Jazz Casino's new twist on the facts does not show that Dr. Levendis cannot meet her burden of proof under the Louisiana Merchant Liability Statute. There is positive evidence that an unreasonable risk of harm existed. If anything, Jazz Casino has created a genuine issue of material fact that precludes summary judgment.

Additionally, none of the cases cited by Jazz Casino involve an instance in which the plaintiff made a positive showing of a condition that created an unreasonable risk of harm—such as

---

[75] *See* Exhibit 6, Exhibit 1 to Ms. Renfro's Deposition Transcript, Guest Incident Report and *See* Exhibit 7, Exhibit 12 to

[76] *See* Exhibit 5, Excerpt from the Deposition of Sharon Guillot, p. 18.

[79] *See* Exhibit 3, Excerpt from the Deposition of Nicki Levendis, pp. 43-52.
[80] *Id.*
[81] *See* Exhibit 2, Excerpt from the Deposition of Nicki Levendis, p. 42.

water and lemon on the floor. All of the cases string cited by Jazz Casino involve a plaintiff who

cannot identify any substance on the floor, as follows:

- In *Trench v. Winn-Dixie Montgomery, LLC*, the plaintiff fell on a slippery floor.[82] The plaintiff testified that "it was slippery where she fell, but she [did] not know why it was slippery.[83]  There was no evidence to specifically identify the cause of the plaintiff's slip and fall.

- In *Pellegrin v. Louisiana-I Gaming*, neither the plaintiff nor her companion inspected the floor after the plaintiff fell.[84] The plaintiff did not know what caused the plaintiff to trip and fall.[85] Although a third party alleged that the plaintiff fell on a rumpled carpet, there was no evidence—visual or otherwise—to establish that there was a rumple in the carpet where the plaintiff fell.[86]

- In *Ayala v. Caesar's Entertainment*, the plaintiff allegedly slipped and fell in water, but he did not see or feel anything wet on the floor.[87] The plaintiff admitted he had been drinking.[88] He did not inspect the floors after he fell.[89] He did not formally report the slip and fall to the casino.[90]

- In *Brown v. Jazz Casino, LLC*, the plaintiff could not show that there was any water on the floor where he slipped.[91] The plaintiff did not see any water on the floor, he alleged that he slipped in water without any evidence to support his allegation.[92]

- In *Ammon v. Dillard's Department Store No. 768*, the plaintiff could not identify any substance on the floor where she fell.[93] The evidence failed to demonstrate that there was

---

[82] *Trench v. Winn-Dixie Montgomery, LLC*, 14-152 (La. App. 5 Cir. 9/24/14); 150 So. 3d 472.
[83] *Id.* at 473.
[84] *Pellegrin v. Louisiana-I Gaming*, 11-1021 (La. App. 5 Cir. 4/24/12); 93 So. 3d 645, 648.
[85] *Id.*
[86] *Id.*
[87] *Alaya v. Caesar's Entertainment,* United States District Court for the Eastern District of Louisiana, Civil Action No. 2018-8095, Section "B," 2019 WL 2058927.
[88] *Id.*
[89] *Id.*
[90] *Id.*
[91] *Brown v. Jazz Casino Company, LLC*, 2018-0913 (La. App. 4 Cir. 5/1/19); 2019 WL 1938775.
[92] *Id.* at *8.
[93] *Ammon v. Dillard's Department Store No. 768*, 2015 WL 3860367 (M.D. La. June 22, 2015).

"anything obvious" on the floor.[94] The plaintiff only testified that the floor "felt slippery."[95]

-       In *Burnett v. Lucky Nails*, the plaintiff acknowledged that "she did not know what made the floor slippery."[96]

-       In *Reeves v. TIP Restaurants, Inc.*, <u>as directly cited by Jazz Casino</u>, "the plaintiff could not state what substance, if indeed there was a foreign substance on the floor, that caused her to fall."[97]

-       In *Broussard v. Outback Steakhouse of Florida, Inc.*, neither the plaintiff nor her husband could identify any substance on the floor where the plaintiff fell.[98] They could not describe the color, smell, or texture of any substance that caused the plaintiff to fall.[99]

Dr. Levendis has and will demonstrate at trial that she slipped and fell due to a condition that created an unreasonable risk of harm. Jazz Casino's contention that Dr. Levendis "speculated" that she slipped on water and lemon on the floor is not supported by the facts and evidence in the record. If anything, Jazz Casino has created a genuine issue of material fact to be decided by the jury.

**D.      <u>Jazz Casino had Constructive Notice of the Hazard</u>**

To satisfy the second element of the Merchant Liability Statute, the plaintiff must show that "[t]he merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence."[100] Dr. Levendis can prove that Jazz Casino had constructive notice of the condition that caused her to fall. "Constructive notice" means that the condition existed for such a period of time that it would have been discovered if the merchant had exercised

---

[94] *Id.* at *5.
[95] *Id.*
[96] *Burnett v. Lucky Nails, LLC*, 2014-1577 (La. App. 1 Cir. 6/5/15); 2015 WL 3513089.
[97] *See* Jazz Casino's Memorandum in Support of Motion for Summary Judgment, p. 10. *See also, Reeves v. TIP Restaurants, Inc.*, 2008 WL 680214 (W.D. La. March 13, 2008).
[98] *Broussard v. Outback Steakhouse of Florida, Inc.*, 146 Fed. Appx. 710, 712 (5th Cir. 2005).
[99] *Id.*
[100] LA R.S. 9:2800.6 (B)

reasonable care.[101] The statute's "period of time" requirement necessitates a "temporal" element in constructive notice.[102] This "temporal" element has two components.[103]

First, the plaintiff must show that the condition existed for "some time period" prior to the fall.[104] There is no "bright line time period" required, and the time period need not be in specific minutes or hours, but "some positive evidence" of how long the condition existed prior to the fall is required.[105] The substance must be present for "some period of time" prior to the accident.[106] Second, the plaintiff must prove that this period of time was "sufficient to place the merchant defendant on notice" of the existence of the condition.[107]

Circumstantial evidence may be relied on to establish constructive notice, as follows:

> [A] plaintiff is not required to prove by eyewitness testimony that the hazardous condition existed for a certain number of minutes prior to the fall. Instead, the factfinder can reasonably infer from circumstantial evidence that it is more probable than not that the condition existed for such time prior to the accident that it should have been discovered and corrected.[108]

Whether the period of time is sufficiently lengthy that a merchant should have discovered the condition is necessarily a fact question that must be submitted to the jury.[109] Stated another way, "whether or not the condition existed for such a length of time sufficient to constitute constructive

---

[101] LA R.S. 9:2800.6 (C)(1).

[102] *See White*, 699 So.2d at 1084.

[103] *See Bagley v. Albertsons, Inc.*, 492 F.3d 328, 331 (5th Cir. 2007); *See also White*, 699 So.2d at 1084–85.

[104] *See Id.*; *See also White*, 699 So.2d at 1084–85.

[105] *See Id.*; *See also White*, 699 So.2d at 1084.

[106] *See Id.*; *See also White*, 699 So.2d at 1084.

[107] *See Bagley*, 492 F.3d at 331; *See also White*, 699 So.2d at 1082.

[108] *See Beggs v. Harrah's New Orleans Casino*, 2014-0725 (La. App. 4 Cir. 1/21/15); 158 So.3d 917, *citing Sheffie v. Wal-Mart Louisiana, LLC*, 2013-0792, p. 6 (La. App. 5 Cir. 2/26/14); 134 So 3d 80, 84, and *Davenport v. Albertsons, Inc.*, 2000-0685, p.4 (La. App. 3 Cir. 12/06/00), 774 So. 2d 340, 343.

[109] *See Lewis*, 245 So. 3d at 74; *See also White*, 699 So.2d at 1084.

notice is a question of fact that **must be submitted to the jury.**"[110] The plaintiff is not required to prove that the condition existed for a certain number of minutes before the fall.[111]

A plaintiff may satisfy the "prerequisite showing of some time period"[112] by demonstrating that the plaintiff's slip and fall and witnesses' observations of a foreign substance occurred within seconds of each other.[113] In *Lewis v. Jazz Casino Company, LLC* witnesses observed the hazardous condition within seconds of the plaintiff's slip and fall.[114] The Louisiana Fourth Circuit held that this post-accident evidence was sufficient to establish that the substance was on the floor for "some period of time" before the accident.[115]

The video of Dr. Levendis's fall undisputedly shows two patrons pointing to what appears to be water and lemon on the floor a few moments before Dr. Levendis fell.[116] Ms. Renfro's report and the surveillance agent's daily report state that the couple in the video may have spilled a drink shortly before Dr. Levendis slipped in the water and lemon.[117] This fact alone demonstrates that the condition existed for "some time" before Dr. Levendis slipped in it. Whether the period of time is sufficiently lengthy that Jazz Casino should have discovered the condition is a question of fact for the jury to determine.

Further, Ms. Renfro's deposition testimony establishes that another individual may have spilled a drink on the floor, but the video of that occurrence was not preserved by Jazz Casino.[118]

---

[110] *See Lewis*, 245 So. 3d at 74, *citing Birdsong v. Hirsch Mem'l Coliseum,* 39-101, p. 7 (La. App. 2 Cir. 12/15/04); 889 So. 2d 1232, 1236. (Emphasis added).
[111] *See Lewis*, 245 So. 3d at 74, *citing Beggs v. Harrah's New Orleans Casino*, 14-0724, p. 10 (La. App. 4 Cir. 1/21/15); 158 So 3d. 917, 925.
[112] *See Lewis*, 245 So. 3d at 74.
[113] *See Id.*
[114] *See Lewis*, 245 So. 3d at 75.
[115] *Id.*
[116] *See* video attached to Jazz Casino's Memorandum in Support of Motion for Summary Judgment as Exhibit C.
[117] *See* Exhibit 6, Exhibit 1 to Ms. Renfro's Deposition Transcript, Guest Incident Report and *See* Exhibit 7, Exhibit 12 ████████████████████
[118] *See* Exhibit 9, Deposition of Kirtrell Renfro, pp. 52-57. *See also,* Part E below.

Ms. Renfro testified that she could not remember exactly how much time occurred between the time

the man possibly spilled a drink and the time the Dr. Levendis slipped and fell.[119] This evidence

also establishes that the condition existed for "some time" before Dr. Levendis fell and warrants

submission of the facts to the jury for determination.

Jazz Casino contends that, because the water and lemon cannot be seen in the video, Dr.

Levendis cannot prove that the condition existed for some time. The video is not meant to establish

that the water and lemon were on the floor. The Guest Incident Report, the report writer's incident

report, the cocktail waitress's testimony, Dr. Levendis's testimony, and pictures of the water and

lemon from the scene of the accident all establish that the water and lemon were on the floor. The

video is instrumental in showing how the water and lemon came to be on the floor before Dr.

Levendis's fall, how long it was there, and whether anyone else noticed it before Dr. Levendis fell.

The report writer and the surveillance agent were not looking to see if the water and lemon were

present in the video, they wanted to know how it got there—who spilled it. Jazz Casino allowed that

evidence to be destroyed, as discussed below.

**E.**     **Jazz Casino had Constructive Notice of the Condition on the Floor, but Destroyed the Evidence of It**

Incredibly, Jazz Casino alleges that Dr. Levendis cannot establish Jazz Casino's constructive

notice of the condition, because she cannot show that the condition existed for "some time" before

her fall.[120] As discussed in the section above, Dr. Levendis has shown that the condition existed for

"some time" before her fall.  Further, the purported inability of Dr. Levendis to establish when the

lemon and water were spilled on the floor is the direct result of Jazz Casino's spoliation of video

---

[119] *Id.*
[120] *See* Jazz Casino's Memorandum in Support of Motion for Summary Judgment, p. 14.

evidence. Jazz Casino intentionally destroyed the video evidence in an attempt to prevent Dr. Levendis from establishing constructive notice.

This is not the first instance of Jazz Casino's intentional destruction of relevant evidence in a slip and fall case. In *Lewis v. Jazz Casino Company, LLC*, the plaintiff slipped on a crushed grape outside of the Masquerade Room.[121] Jazz Casino only saved one minute of video footage before the plaintiff's fall.[122] On appeal, the Louisiana Fourth Circuit noted Ms. Lewis's allegation that:

> Jazz Casino **selectively chose** to only preserve video for one minute before her fall, which raises a genuine issue of material fact as to whether Jazz Casino intentionally, and without reasonable explanation, failed to preserve video evidence that was detrimental to its case and would have enabled Ms. Lewis to prove her case.[123]

Another plaintiff has recently asserted that Jazz Casino failed to preserve evidence in a slip and fall case. In *Taylor v. Jazz Casino Company, LLC*, the plaintiff alleged that "[d]efendants intentionally disposed of material evidence, including but not limited to, photographs of the ramp(s), as well as video of the incident by the ramp(s), for the purpose of depriving Petitioners' use of the evidence…."[124],[125] Jazz Casino should not be permitted to cherry pick video surveillance to deprive plaintiffs of the ability to prove their case—such actions are clearly an abuse of the law and a derogation of the legislative intent.

A recent federal decision, *Culhane v. Wal-Mart Supercenter*, discusses spoliation of video evidence at length and is instructive on the issue.  In *Culhane,* the plaintiff was injured by a garage door on Wal-Mart's premises.[126] The asset protection manager, who was solely responsible for choosing which video to preserve, saved video from the interior of the store, but failed to save video

---

[121] *See Lewis*, 245 So. 3d at 72.
[122] *Id.*
[123] *Id.* at 76. (Emphasis added).
[124] *Id.*
[125] Jazz Casino subsequently removed the case to the Eastern District of Louisiana, and then requested that the Court transfer the case to the Southern District of Mississippi where it is currently pending.
[126] *Id.* at 771.

from the exterior of the store.[127] The unsaved video was overwritten.[128] The Court found that the asset protection manager **selectively preserved** footage.[129]

The *Culhane* Court determined that Wal-Mart spoliated evidence. First, the Court considered the fact that Wal-Mart was on notice of the potential for litigation.[130] The plaintiff sent a written request that Wal-Mart preserve all evidence related to the accident.[131] The Court also noted that because Wal-Mart chose to preserve *some* footage, it was clearly on notice of potential future litigation.[132] Second, the Court considered the fact that Wal-Mart failed to adhere to its written company policy outlining procedures for "gathering details" and preserving evidence in connection with an accident.[133] Third, the Court considered the fact that the company failed to conduct a thorough investigation in accordance with its own written policy.[134]

The facts in *Culhane* are noticeably similar to the facts currently before the Court. Like the asset protection manager in *Culhane*, Jazz Casino's surveillance agents were solely responsible for maintaining video footage of the accident.[135] Jazz Casino was solely in possession of evidence that could fairly be supposed to have been material to Dr. Levendis's case. Jazz Casino saved *some* of the video footage before Dr. Levendis's fall, but failed to save all relevant video.[136] Specifically, Jazz Casino knowingly failed to save footage of a man who possibly spilled a drink in the same area where Dr. Levendis fell.[137]

---

[127] *Id.*
[128] *Id.* at 772.
[129] *Id.* at 773-774.
[130] *Id.* at 773-774.
[131] *Id.*
[132] *Id.* at 774.
[133] *Id.* at 773-774.
[134] *Id.*
[135] *See* Exhibit 10, Deposition of Kirtrell Renfro, p. 61.
[136] *See* Exhibit 9, Deposition of Kirtrell Renfro, pp. 52-57.
[137] *Id.*

Like Wal-Mart Supercenter, Jazz Casino was put on notice of the likelihood of potential litigation, but failed to preserve all relevant evidence related to the slip and fall.  Dr. Levendis identified Jazz Casino as the party at fault in her Guest Incident Report.[138] Dr. Levendis sent a preservation of evidence letter shortly after she slipped and fell at Jazz Casino.[139]  The letter asked Jazz Casino to take all "immediate action to preserve ALL evidence that is or could be related to this matter."[140] Also, like Wal-Mart, Jazz Casino chose to save *some* video, indicating that it was already on notice of potential litigation before the preservation of evidence letter was sent.[141]

Like Wal-Mart Supercenter, Jazz Casino apparently appreciates the importance of preserving footage that could be used in litigation. ██████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████

Jazz Casino was on notice that Dr. Levendis suffered an injury from a slip and fall on its property, and it allowed evidence of the potential cause of Dr. Levendis's slip and fall to be destroyed.[144] Jazz Casino **selectively chose** which video to save—to its benefit and to Dr. Levendis's detriment. Jazz Casino's actions directly conflict with its written policy on video retention after a slip and fall. Jazz Casino cannot provide a reasonable, credible explanation for its

---

[138] *See* Exhibit 6, Guest Incident Report.
[139] *See* Exhibit 11, Preservation of Evidence Letter and Return Receipt.
[140] *Id.*
████████████████████████████████████████████
[144] *See* Exhibit 9, Deposition of Kirtrell Renfro, pp. 52-57.

actions. Jazz Casino undoubtedly intended to deprive Dr. Levendis of the opportunity to use the evidence at trial.

### F.  The Cases Cited by Jazz Casino Fail to Show that Dr. Levendis Cannot Establish Constructive Notice

In a quantity instead of quality approach, Jazz Casino cited a litany of cases that bear no relevance to the facts at issue.[145] These cases involve accidents in which the plaintiff cannot establish the presence of a foreign substance on the floor.[146] For instance, in *Grantham v. Eldorado Resort Casino Shreveport,* the plaintiff could not identify the substance she slipped in.[147]  Dr. Levendis has established that she slipped on water and lemon on the floor. The cases cited by Jazz Casino are inapposite to Dr. Levendis's case and should be disregarded.

Jazz Casino cited *Moy v. Brookshire Grocery Co.*, in support of its theory that Dr. Levendis did not slip in lemon and water, because you cannot see the lemon and water in the video. In *Moy,* the plaintiff alleged that she slipped in water on the floor, but could not establish through any other means that the puddle of water was on the floor.  The Court noted that

> What is readily apparent is that a number of individuals, both employees and customers, traversed the area of Plaintiff's fall during the time span of the video without incident. No one appears to slip or have difficulty walking, and no one looks down as if to see something on the floor.[148]

Pictures, testimony, video, and written reports have affirmatively established that there was lemon and water on the floor, and Dr. Levendis slipped and fell in it. Additionally, the couple who walked past the lemon and water on the floor looked down and pointed to the hazard just moments before Dr. Levendis slipped in it. *Moy* is distinguishable and inapplicable to this case.

---

[145] *See* Jazz Casino's Memorandum in Support of Motion for Summary Judgment, pp. 19-22.
[146] *Id.*
[147] *Grantham v. Eldorado Casino Resort,* 49-474 (La. App. 2 Cir. 11/19/14); 152 So. 3d 1028, 1034, *writ denied*, 2014-2654 (La. 3/6/15); 160 So.3d 1290.
[148] *Moy v. Brookshire Grocery Co.,* 48-177 (La. App. 2 Cir. 6/26/13); 117 So. 3d 611, 614.

The court *Peterson v. Brookshire Grocery Co.,* granted summary judgment, because the plaintiff could not establish constructive notice of the hazardous condition.[149] Importantly, the defendant in that case preserved at least 22 minutes of video footage in support of its motion for summary judgment.[150] Upon reviewing the video, the court considered a number of factors which precluded a finding of constructive notice:

> Similarly, the video footage does not evidence any other customers attempting to avoid the alleged hazardous area. To the contrary, as noted by the district judge, the area where Peterson fell was heavily trafficked and numerous customers are seen effortlessly traversing the area where Peterson fell. The source of the liquid is not discernable from the surveillance video: **the video does not clearly show someone or something creating the wet substance or otherwise provide any indication as to the length of time the liquid substance remained on the floor prior to Peterson's slip and fall**.[151]

Unlike the court in *Peterson,* this Court cannot review comprehensive video evidence of the condition before Dr. Levendis's fall. Jazz Casino preserved only 20 seconds of video before Dr. Levendis's fall and allowed all other evidence related to her fall to be destroyed. As discussed below, Jazz Casino spoliated this evidence to Dr. Levendis's disadvantage.

In *Courington v. Wal-Mart Louisiana, LLC*, the plaintiff slipped on an ice cube.[152] Although Wal-Mart preserved the video footage of the events leading up to the accident, the plaintiff could not establish how the ice came to be on the floor.[153] Dr. Levendis cannot establish exactly who spilled the drink in which she slipped, because Jazz Casino spoliated the video evidence.

---

[149] *Peterson v. Brookshire Grocery Co.*, 2017 WL 3272374 (W.D. La. July 28, 2017).
[150] *Id.* (Emphasis added).
[151] *Id.* at 537.
[152] *Courington v. Wal-Mart Louisiana, LLC*, 2018 WL 707521 (W.D. La. Feb. 2, 2018).
[153] *Id.*

In *Guillot v. Dolgencorp, LLC,* Judge Thibodeaux relied on specific facts and evidence in the record at trial, including more than 10 minutes of surveillance footage to conclude that constructive notice had not been established.[154] Jazz Casino spoliated video evidence to prevent Dr. Levendis from using it at trial. It may be assumed that the destroyed evidence would establish that Jazz Casino had constructive notice of the condition that injured Dr. Levendis. Additionally, the facts at issue in this case were submitted to a factfinder at trial, not determined by summary judgment.

**G.  Jazz Casino Failed to Exercise Reasonable Care**

A merchant must take reasonable protective measures, including periodic inspections, to ensure that its premises are kept free from substances or conditions that might cause a patron to fall.[155] Whether measures taken are reasonable is determined on a case by case basis.[156] The degree of vigilance must be proportionate to the risk involved, as determined by the overall volume of the business, the time of day, the location in the premises, and other relevant considerations.[157]

---

[154] *Guillot v. Dolgencorp, LLC*, 2013-587 (La. App. 3 Cir. 11/27/13); 127 So.3d 124, 131.
[155] *Beggs,* 158 So. 3d at 924-925, *citing Hardman v. The Kroger Company,* 34-250 (La. App. 2d Cir. 12/6/00), 775 So. 2d 1093.
[156] *Id.*
[157] *Id.*

██████████████████████████████████████████████████████████

█████████████████████████████████████████████

Dr. Levendis slipped and fell on January 21, 2018, which was a Sunday. Sundays are usually busy, high volume days at Jazz Casino.[164] █████████████████████████████

██████████████████████████████████████████ Nevertheless, the EVS employee closest to the public walkway where Dr. Levendis fell only inspected the public walkway two, maybe three times from 3:00 p.m. until the time that Dr. Levendis fell at around 6:38 p.m.[166] Jazz Casino did not take reasonable care to keep its floors free from substances that could cause harm to its patrons, and Dr. Levendis was injured as a result.

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████ The video of the person who possibly spilled the drink in which Dr. Levendis fell was not preserved. Ms. Renfro could not remember exactly how much time occurred between the time the man possibly spilled a drink and the time the couple possibly spilled a drink and/or pointed out the water and lemon on the floor.[169] If Jazz Casino had properly preserved the video evidence, it is more probable than not that Dr. Levendis would be able to establish that Jazz Casino breached its duty of reasonable care.

---

█████████████████████████████████████████

[164] *See* Exhibit 16, Excerpt from the Deposition of Kirtrell Renfro, p. 29.

████████████████████████████████████████

[166] *See* Exhibit 18, Excerpt from the Deposition of Quinton Martin, p. 16.
[167] *Id.*
[168] *Id.*
[169] *Id.*

### III.    CONCLUSION

Dr. Levendis has established that she will be able to meet her burden of proof at trial.

Nevertheless, there are genuinely disputed material facts at issue which should preclude summary

judgment. For these reasons, Dr. Levendis respectfully requests that Jazz Casino's Motion for

Summary Judgment be denied.

Respectfully submitted:

**COUHIG PARTNERS, LLC**

*/s/ Claire E. Pontier*
Donald C. Massey (Bar Roll 14177)
Claire E. Pontier (Bar Roll 32025)
John Zazulak (Bar Roll 38452)
1100 Poydras Street, Suite 3250
New Orleans, Louisiana 70163
Telephone:  (504) 588-1288
Facsimile:  (504) 588-9750
Email:  dmassey@couhigpartners.com
cpontier@couhigpartners.com
jzazulak@couhigpartners.com

### CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2019, a true and correct copy of the foregoing motion was

served on counsel of record through the Court's electronic filing system.

*/s/ Claire E. Pontier*
Claire E. Pontier