# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **NICKI LEVENDIS** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 19-1557** |
| **HARRAH'S NEW ORLEANS MANAGE-** | * | **SECTION "I" (3)** |
| **MENT CO., LLC, CAESARS LICENSE** | | |
| **COMPANY LLC, CEOC, LLC AND JAZZ** | * | **JUDGE AFRICK** |
| **CASINO COMPANY, LLC** | | |
| *    *    *    *    *    *    *    * | * | **MAG. DOUGLAS** |

## REPLY MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

Jazz Casino Company, LLC ("Jazz Casino") submits this reply memorandum to respond to the arguments made by plaintiff in opposition to Jazz Casino's motion for summary judgment. Plaintiff failed to submit evidence to demonstrate a genuine dispute as to any material fact. For this reason, as more fully set forth below, summary judgment should be granted as a matter of law.

### A. Plaintiff presented no admissible evidence to establish that she slipped on lemon and water.

Plaintiff failed to present admissible evidence that she slipped and fell on the lemon and water observed after the accident. Plaintiff argues that she testified during her deposition that she slipped and fell on the lemon and water,[1] but plaintiff mischaracterizes her testimony. Plaintiff testified that she does not know what caused her fall and admitted that she simply assumed the lemon and water caused her accident.

---

[1] See page 9 of plaintiff's opposition memorandum.

Q.  Are you assuming that it was the lemon slice and/or liquid that caused you to fall?

A.  Yes.

Q.  And why do you assume that?

A.  Because it was no other reason to make me fall.  It's not that I lost my – my steps.  So and then I fall, and I saw that on the floor, so yeah, that is what make me fall.[2]

Q.  Then it [the Guest Incident Report] says, "Slipped on a slice of lemon and water in the center of the floor and fell Cannot move right arm."  So my first question is, do you know if you slipped on the slice of lemon or is that something you are assuming?

A.  I don't know.  I couldn't find any other reason because I didn't lose my – my steps.[3]

Q.  So you are assuming you slipped to go down is what you are saying?

A.  You might say that.

Q.  Well, I'm asking you if that is what you're saying.

A.  I'm – yes.

Q.  Are you assuming that?

A.  Yes.[4]

Fed. Rule of Evidence 602 limits the scope of a witness's testimony to matters that are within his or her personal knowledge.  "A witness may testify to a matter only if evidence is introduced to support a finding that the witness has personal knowledge of the matter."  *Id*.  Speculation and unsubstantiated assertions are inadequate to satisfy the non-movant's burden in a motion for summary judgment.  *Ramsey v. Henderson,* 286 F.3d 264, 269 (5th Cir. 2008).  Furthermore, "the non-movant still cannot defeat summary judgment with speculation,

---

[2] Deposition of plaintiff attached as Jazz Casino's original memorandum as Exhibit A, p. 49, ll. 17-25.
[3] Id., p. 56, ll. 18-25, p. 57, l. 1.
[4] *Id*., p. 57, ll. 12-19.

improbable inferences, or unsubstantiated assertions." *Willoughby v. Metro. Lloyds Ins. Co*., 548 Fed.Appx. 121, 123 (5th Cir. 2013), citing *Likens v. Hartford Life and Accident Ins. Co*., 688 F.3d 197, 202 (5th Cir.2012).  Clearly, plaintiff has no personal knowledge that she slipped on lemon and water and her testimony that she believes she slipped on water and lemon is pure speculation, is an unsubstantiated assertion and is inadmissible to defeat summary judgment

Plaintiff argues that Kitrell Renfro, the Jazz Casino report writer who prepared the Incident Report, "determined that Dr. Levendis slipped and fell on water and lemon on the ground."[5]  Plaintiff cites the Incident Report in support of this statement, but she mischaracterizes the report.  Renfro stated in the Incident Report that "Levendis stated that while walking pass [sic] Masquerade, she slipped on a slice of lemon and water on the floor causing her to fall."  Renfro did not witness the accident and has no personal knowledge as to why plaintiff fell, she simply reported what she was told by plaintiff.

Plaintiff also argues that Paulette Wilson, the Jazz Casino surveillance agent who reviewed the video after the accident, believed that plaintiff slipped and fell on water and lemon.[6]  But Wilson has no personal knowledge as to why plaintiff fell, she simply reviewed the video after plaintiff's accident, and the video does not show the lemon and water, so it cannot be determined from viewing the video that plaintiff slipped on the lemon and water.[7]

Plaintiff claims that Jazz Casino "invented" the "notion" that plaintiff fell because she twisted her ankle.[8]  Significantly, plaintiff ignored the best evidence that sheds light on why plaintiff fell, the video and the photograph of the lemon and water.  The video clearly shows

---

[5] See page 9 of plaintiff's opposition memorandum.
[6] See page 10 of plaintiff's opposition memorandum.
[7] Plaintiff claims that a Jazz Casino cocktail server, Sharon Guillot, saw the lemon and water a foot or two away from where plaintiff was lying on the floor (see page 2 of plaintiff's opposition memorandum), but Guillot could not remember if plaintiff was on the floor or seated in a chair when she saw the fruit close to her.  Deposition of Sharon Guillot attached hereto as Exhibit D, p. 20, ll. 8-25, p. 21, ll. 1-25.
[8] See page 10 of plaintiff's opposition memorandum.

plaintiff's left ankle twisting, causing her to fall.[9]  The video does not show plaintiff's foot sliding forward as if she slipped.[10]  And the photograph clearly shows that the water had not been slipped in and the lemon had not been stepped on.[11]

Plaintiff failed to present any admissible evidence that she slipped on the lemon and water.  But even if plaintiff had personal knowledge as to why she fell, her testimony would be contradicted by the video and photograph.  When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.  *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007) (summary judgment granted where the plaintiff's version of events was so utterly discredited by video of the incident that no reasonable jury could have believed him).  *Scott* is controlling.  Here, the video and photograph blatantly contradict plaintiff's claim that she slipped on the lemon and water, so there is no genuine dispute as to material fact.

Since plaintiff failed to establish that she fell due to the presence of lemon and water, she failed to meet her burden of establishing the first essential element of the Merchant Statute – that she slipped at Harrah's New Orleans Casino due to the presence of a condition that presented an unreasonable risk of harm.  Accordingly, summary judgment should be granted dismissing plaintiff's claims.

**B.  Plaintiff failed to establish constructive notice.**

Plaintiff argues that she can prove constructive notice based on the video that, according to plaintiff, "shows two patrons pointing to what appears to be lemon and water on the floor a

---

[9] See video attached to Jazz Casino's original memorandum as Exhibit C.
[10] *Id.*
[11] See photograph attached to Jazz Casino's original memorandum as Exhibit D-3.

few moments before plaintiff fell."[12]  There is no question that the two patrons, one carrying a drink, can be seen in the video looking down at the floor, but a lemon and water are not seen in the video,[13] so it is pure speculation that they were looking at lemon and water that were seen on the floor after the accident.  When the man first looks at the floor at 18:36:17 in the video, he had already walked past the dark tile to the left of the accident site and he is looking at an area of the floor that is several feet forward of the dark tile.[14]  Importantly, plaintiff twists her ankle and falls at 18:36:24 several feet **before** she reached the end of the dark tile.[15]  So even if plaintiff slipped and fell in lemon and water, which is denied, the lemon and water would have been located where plaintiff fell, which was several feet away from the spot where the man looked at the floor.  The video does not, as plaintiff claims, establish that the lemon and water were present for "some time."

Plaintiff also relies on Renfro's testimony that when she watched the video shortly after the accident, she saw a man with a drink who possibly could have spilled something in the same area prior to plaintiff's accident.[16]  Plaintiff contends that Renfro could not remember how much time passed between when this man walked by and when plaintiff fell,[17] but this is a mischaracterization of Renfro's testimony.  Renfro testified that she saw this man walk in the area about one minute prior to the accident.[18]  According to Renfro, the man possibly spilled his drink, but she could not state that he did spill his drink.[19]  Renfro also testified that the woman walking with the man just in front of plaintiff in the video possibly spilled her drink, but she is

---

[12] See page 14 of plaintiff's opposition memorandum.
[13] See video attached to Jazz Casino's original memorandum as Exhibit C.
[14] *Id*.
[15] *Id*.
[16] See pages 14-15 of plaintiff's opposition memorandum.
[17] See page 15 of plaintiff's opposition memorandum.
[18] Deposition of Kitrell Renfro attached hereto as Exhibit B, p. 54, ll.10-21, p. 63, ll. 15-25, p. 64, ll. 1-10.
[19] *Id*., p. 62, ll.5-25, p. 63, ll. 1-14.

not sure and could not say who spilled their drink.[20]  So this speculative testimony does not establish that the lemon and water had been spilled by either the man or the woman and was present for up to one minute prior to plaintiff's accident.

Even if plaintiff could prove that the lemon and water had been present for one minute prior to plaintiff's accident, this is insufficient to establish constructive notice.  "When constructive notice is at issue, the claimant must come forward with positive evidence showing that the damage causing condition existed for some time, **and** that such time was sufficient to place the merchant on notice of its existence."  *Hazelett v. Louisiana-I Gaming*, 16-297 (La.App. 5 Cir. 12/21/16), 210 So.3d 447, 452 (emphasis added).  The presence of a substance on the floor for two minutes or less is insufficient to prove constructive notice.  *Guillot v. Dolgencorp, L.L.C.*, 2013-2953 (La. 3/21/14), 135 So.3d 1177.  See, also, *Moses v. Wal-Mart Stores, Inc*., 2017-566 (La.App. 3 Cir. 11/29/17), 2017 WL 5761360 at *2-3 (summary judgment granted in favor of merchant where video showed that the spill existed for approximately one minute prior to the accident, which was not a "sufficiently lengthy" time to impose constructive notice on the merchant).

Plaintiff failed to establish that she will be able to meet her burden of proving constructive notice, and, accordingly, summary judgment should be granted.

## C.  Plaintiff failed to prove spoliation of evidence.

Plaintiff also contends that Jazz Casino "intentionally destroyed the video evidence in an attempt to prevent Dr. Levendis from establishing constructive notice."[21]  But plaintiff conveniently omits key testimony which establishes that there was no intentional destruction of video in this case, and in the absence of bad faith, plaintiff cannot prove spoliation of evidence.

---

[20] *Id*.
[21] See pages 15-16 of plaintiff's opposition memorandum.

Paulette Wilson has been a Jazz Casino surveillance agent for 12 years and is responsible for determining how much video to save after an accident.[22]  In accident cases, Wilson determines how much video to save by watching the video to see if it shows what caused the accident, and if it shows the cause, she saves video from that point forward, which is standard procedure.[23]  Surveillance agents are given discretion to decide how much video to save.[24] Wilson was working in the surveillance room on the date of plaintiff's accident and was alerted about the accident by radio or phone, she did not watch the accident live.[25]  She reviewed the video after she had been notified of the incident and decided to save approximately 20 seconds of video before the accident because she believed the woman seen walking in front of plaintiff in the video spilled her drink and caused the accident.[26]

Mark Schielder, the Jazz Casino Director of Surveillance, testified during the corporate deposition of Jazz Casino that in a slip and fall case, up to 15 minutes of video is normally saved, depending on the facts of each case.[27]  A surveillance agent will review video coverage and look for the cause of the fall, and if the agent determines the cause of the accident, he or she will save the video from that point forward, even if it is less than 15 minutes prior to an accident.[28] Schielder would not have saved more than 20 seconds of video in this case because based on his review of the video, the cause of the accident was plaintiff's ankle twisting due to her shoe.[29]

When a surveillance agent decides how much video to retain, it is saved or exported by downloading that portion of the video to a server.[30]  Any video that is not exported is

---

[22] Deposition of Paulette Wilson attached hereto as Exhibit E, p. 7, ll. 23-25, p. 8, ll. 1-3, 14-15, p. 11, ll. 13-16.
[23] Id., p. 11, ll. 17-25.
[24] Id., p. 17, ll. 1-4.
[25] Id., p. 22, ll. 17-25, p. 23, ll. 1-4.
[26] Id., p. 23, ll. 5-10, p. 29, ll. 9-25, p. 30, ll. 1-14, 18-23.
[27] Deposition of Mark Schielder attached hereto as Exhibit F, p. 13, ll. 17-24, p. 96, ll. 8-18.
[28] Id., p. 20, ll. 20-25, p. 21, ll. 1-25, p. 21, ll. 1-8, p. 25, ll. 15-20, p. 30, ll. 23-25, p. 31, ll. 1-10.
[29] Id., p. 66, ll. 7-25, p. 67, ll. 1-3, 19-25, p. 68, ll. 1-6.
[30] Id., p. 17, ll. 8-11

automatically taped over after 7 days.[31]  This 7-day retention period is in accordance with Louisiana State Police requirements, and Jazz Casino complied with that 7-day requirement in this case.[32]  So by the time Jazz Casino received counsel's preservation letter dated March 23, 2018 - more than two months after the accident[33] - the only video available to be preserved was the exported video that was attached to Jazz Casino's motion for summary judgment.  Any video prior to 18:36:07 was automatically recorded over 7 days after the accident.

> A party asserting a spoliation of evidence claim must show: (1) a duty existed to preserve the evidence due to litigation or the reasonable expectation of litigation; (2) the evidence was destroyed (or concealed); (3) the destruction was **intentional**; (4) the destroyed evidence was relevant; and (5) the unavailability of the destroyed evidence resulted in prejudice. See *In re Actos (Pioglitazone) Prods. Liability Litig*., No. 11-2299, 2014 U.S. Dist. LEXIS 86101, 2014 WL 2921653, at *23 (W.D. La. Jun. 23, 2014). Generally, a party's duty to preserve evidence arises when a party knew or should have known of the potential for future litigation. *Dixon v. Greyhound Lines, Inc*., No. 13-0179, 2014 U.S. Dist. LEXIS 159714, 2014 WL 6087226, at *3 (M.D. La. Nov. 13, 2014) ("The future litigation must be probable, which has been held to mean more than a possibility."); see also *Putscher v. Smith's Food & Drug Centers, Inc*., No. 13-1509, 2014 U.S. Dist. LEXIS 85024, 2014 WL 2835315, at *7 (D. Nev. Jun. 20, 2014) (rejecting plaintiff's argument that store's "duty to preserve surveillance footage of the slip and fall arose when Smith's completed an incident report").

*Tucker v. Target Corp*., 2019 WL 961994 at *3-4 (W.D.La. Feb. 27, 2019) (emphasis added).

"If a court concludes that an obligation [to preserve evidence] existed, then it must consider whether the evidence was intentionally destroyed and whether it was destroyed in bad faith. Without a showing of bad faith or bad conduct, no sanction can be assessed against the party who destroyed the evidence."  *Dartez v. Caldive Int'l, Inc*., 2008 U.S. Dist. LEXIS 131257 at *3 (E.D.La. Feb. 15, 2008).

---

[31] *Id*., p. 16, ll. 16-25.
[32] *Id*., p. 97, ll. 19-25, p. 98, ll. 1-2.
[33] See Exhibit 11 attached to plaintiff's opposition memorandum.

Here, Jazz Casino saved what it believed to be relevant video and the remaining video was automatically recorded over 7 days after the accident.  Jazz Casino did not receive notice from plaintiff's counsel regarding potential litigation until several months later.  Under these facts, Jazz Casino was under no duty to preserve the remaining video.  *Tucker v. Target Corp*., *supra.*  And even if Jazz Casino owed a duty to preserve the video that arose when it received notice from plaintiff's counsel, the video had already been recorded over by then, so plaintiff cannot prove an intentional destruction of evidence.  *Id.*  See, also, *Patrick v. Tractor Supply Co*, 2017 WL 396301 at *18-19 (E.D.La. Jan. 30, 2017) ("It is well settled within the Fifth Circuit that an adverse inference drawn from the destruction of records is predicated on bad faith. … Defendant's failure to retain the footage was not the result of a directed action to delete the information but rather a failure to stop the automatic deletion process. Such action, at best, amounts to negligence and does not rise to the level of bad faith. Based on these facts, the Court does not find bad faith on the part of Defendant or its third-party claims administrator, and finds that none of Plaintiff's proposed remedies—a default judgment, striking pleadings, or an adverse inference—are warranted in this case.").

Plaintiff cites three cases in support of her spoliation argument that are inapposite.  In *Lewis v. Jazz Casino Company, LLC*, 2017-0935 (La.App. 4 Cir. 4/26/18), 245 So.3d 68), *writ denied*, 2018-0757 (La. 08/21/18), 252 So. 3d 877, the plaintiff **alleged**, for the first time in the appellate court, that Jazz Casino selectively chose to save one minute of video prior to the fall, but no facts were presented to the trial or appellate court on the spoliation issue.  The court reversed summary judgment without discussing any facts bearing on the spoliation issue, and there were no facts before the court as to why that amount of video had been retained.  The plaintiff **alleged** spoliation in her lawsuit in *Taylor v. Jazz Casino Company, LLC*, 2:18-cv-

08276 (E.D.La.), but the accident in that case occurred at Harrah's Gulf Coast Hotel in Biloxi and the case was transferred to the Southern District of Mississippi shortly after it was removed to federal court.  See order and reasons attached as Exhibit G.  Plaintiff also relies on *Culhane v. Wal-Mart Supercenter*, 364 F.Supp.3d 768 (E.D.Mich. Jan. 10, 2019), but in that case, the video was destroyed after plaintiff's counsel sent a preservation letter to the defendant, and the defendant had no explanation for why the video had not been saved.

The uncontroverted evidence establishes that Jazz Casino had no duty to save additional video after the 7-day retention period and did not intentionally destroy video evidence for the purpose of depriving plaintiff of its use.  Plaintiff failed to prove any bad faith and, accordingly, plaintiff's spoliation argument cannot defeat Jazz Casino's motion for summary judgment.

## <u>CONCLUSION</u>

Since plaintiff failed to produce factual support sufficient to prove the essential elements of her claim, there is no genuine dispute as to any material fact.  Accordingly, as a matter of law, summary judgment should be granted and plaintiff's claims should be dismissed, with prejudice, at plaintiff's cost.

Respectfully submitted,

MURPHY, ROGERS, SLOSS,
  GAMBEL & TOMPKINS

*/s/ Jeffrey A. Raines*

_____

Robert H. Murphy (#9850)
rmurphy@mrsnola.com
Jeffrey A. Raines (#11076)
jraines@mrsnola.com
701 Poydras Street
Suite 400, One Shell Square
New Orleans, LA   70139
Telephone:  (504) 523-0400
Facsimile:  (504) 523-5574
*Attorneys for Jazz Casino Company, LLC*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that 22 July 2019, a copy of the foregoing pleading was sent to all counsel of record, either by operation of the Court's CM/ECF system, by hand, by e-mail, by telefax or by placing same in the United States mail, properly addressed, and first class postage prepaid.

*/s/ Jeffrey A. Raines*

_____

4825-8314-3325, v. 1