UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

NICKI LEVENDIS                                                      CIVIL ACTION

VERSUS                                                              No. 19-1557

HARRAH'S NEW ORLEANS                                                SECTION I
MANAGEMENT COMPANY, LLC, ET AL.

## ORDER & REASONS

This case arises from injuries that plaintiff Nicki Levendis ("Levendis") sustained from a fall at Harrah's New Orleans Casino on January 21, 2018. Before the Court is defendant Jazz Casino Co., LLC's ("Jazz Casino") motion[1] for summary judgment, which argues that Levendis will be unable to prove the essential elements of her claim under the Louisiana Merchant Liability Act ("LMLA"), La. Stat. Ann. § 9:2800.6. For the following reasons, the motion is granted.

### I.

Following a few hours of poker at Harrah's New Orleans Casino on January 21, 2018, Levendis left the poker tables to go to dinner. As she walked past the Masquerade Lounge, Levendis slipped and fell, injuring her arm and face.[2] After individuals came to her aid and helped her up into a chair, Levendis spotted a slice of lemon and a small puddle of clear liquid[3] on the floor in the area where she fell.[4]

---

[1] R. Doc. No. 47.
[2] R. Doc. No. 52, at 1–2.
[3] The parties agree that there was liquid on the floor in the area where Levendis fell, although they refer to the substance interchangeably as "clear liquid" and "water." For consistency, the Court will refer to the liquid as water.
[4] *See* R. Doc. No. 52-4, at 8 ¶¶ 3–7; 9 ¶¶ 1–14.

1

She did not see them when she was walking.[5] Although Levendis admits that she has no personal knowledge as to how the lemon and water came to be on the floor or how long they were there before she fell,[6] Levendis claims that the lemon slice and water were the cause of her fall and that Jazz Casino failed to exercise reasonable care to keep its floors clear of these allegedly harmful substances.

## II.

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines that there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56, the nonmoving party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by

---

[5] R. Doc. No. 52-4, at 10 ¶¶ 10–15.
[6] *Id.* at 10 ¶¶ 16–22.

2

creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

### III.

Jazz Casino moves for summary judgment, asserting that Levendis will be unable to meet her burden of proof under the LMLA. Specifically, Jazz Casino argues that Levendis cannot identify the cause of her fall, demonstrate that Jazz Casino either created the condition or had notice of the condition causing the fall, or prove that Jazz Casino failed to exercise reasonable care. In response, Levendis claims that she will be able to satisfy each element of the LMLA and establish that Jazz Casino is liable for her injuries.

Louisiana law imposes a duty on merchants to "exercise reasonable care to keep [their] aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage." La. R.S. 9:2800.6.

A plaintiff who seeks damages under the LMLA bears the burden of proving that: (1) the condition on the merchant's premises created an unreasonable risk of harm and the risk was reasonably foreseeable; (2) the merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and (3) the merchant failed to exercise reasonable care. La. R.S. 9:2800.6(B). The law does not allow for burden-shifting; the defendant merchant does not need to prove the absence of the condition prior to the incident at issue. *White v. Wal-Mart Stores, Inc.*, 97-0393 (La. 9/9/97); 699 So. 2d 1081, 1084. The plaintiff's "failure to prove any [of the elements of the LMLA] is fatal to the [plaintiff]'s cause of action." *Peterson v. Brookshire Grocery Company*, 751 F. App'x 533, 535 (5th Cir. 2018) (per curiam) (quoting *White*, 699 So. 2d at 1086).

Under the second element of the LMLA, a merchant has constructive notice of the condition if the plaintiff proves "that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care." La. R.S. 9:2800.6(C)(1). The presence of an employee of the merchant in the area where the condition existed is insufficient to satisfy the constructive notice requirement, "unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition." *Id*. Constructive notice includes a "mandatory temporal element," which requires "positive evidence that the damage-causing condition existed for some period of time, and that such time was sufficient to place the merchant defendant on notice of its existence." *White*, 699 So. 2d at 1081. Evidence of the temporal element may be both circumstantial and direct. *Williams v.*

4

*Home Depot USA, Inc.*, 341 F. App'x 976, 978 (5th Cir. 2009) (per curiam) (citing *Bagley v. Albertsons, Inc.*, 492 F.3d 328, 331 (5th Cir. 2007)). There is no "bright line time period" to satisfy the temporal element; "whether the period of time is sufficiently lengthy that a merchant should have discovered the condition is necessarily a fact question." *White*, 699 So. 2d at 1084. However, "there remains the prerequisite showing of some time period" of the condition's existence before the harm occurred. *Id*.

## IV.

Levendis has failed to provide evidence necessary to overcome summary judgment in that she has not demonstrated that there is a genuine issue of material fact with respect to whether Jazz Casino had actual or constructive notice of the condition that caused her fall. The lack of actual notice is not in dispute; Levendis does not allege that any employee of Jazz Casino had notice of the lemon and water on the floor before she fell. With respect to constructive notice, Levendis acknowledged in her deposition that she has "no idea" how the lemon slice and water came to be on the floor or the length of time that either substance had been there.[7] Merely showing "that the condition existed without an additional showing that the condition existed for some time before the fall" does not satisfy the burden of proof for constructive notice. *White*, 699 So. 2d at 1084.

Significantly, Levendis has not provided sufficient evidence as to the length of time that the lemon and the water were on the floor before she fell or proof that they

---

[7] *Id*. at 10 ¶¶ 16–23.

caused her to fall. Levendis "assumes" that the lemon and water were the culprit of her slip on the floor because "it [sic] was no other reason to make me fall."[8] As Levendis admitted in her deposition:[9]

> Q: You remember something slippery causing you to fall?
>
> A: I don't remember anything. I remember myself on the floor.
>
> …
>
> Q: So you're assuming you slipped to go down is that what you're saying?
>
> A: You might say that.
>
> Q: Well, I'm asking you if that's what you're saying.
>
> A: I'm – yes.
>
> Q: Are you assuming that?
>
> A: Yes.

Despite her causal assumption, Levendis has presented no evidence that she actually stepped on the lemon or in the puddle of water.[10] Moreover, other evidence weighs against her claims. According to the deposition of Jazz Casino employee Kirtrell Renfro ("Renfro"), who arrived at the scene a few minutes after Levendis fell,

---

[8] *Id.* at 11 ¶¶ 17–25.
[9] R. Doc. No. 47-4, at 14 ¶¶ 6–19.
[10] The Court has reviewed the video footage of Levendis's slip and fall, as well as photos of the footwear that Levendis wore that day. The lemon slice and water are not clearly visible in the video. *See* R. Doc. Nos. 47-7 & 65-2.

the lemon slice was "intact," and it did not appear to be "crushed."[11] In addition, the water on the floor did not appear to her to be "smeared."[12]

"[C]ourts will not infer constructive notice for the purposes of summary judgment where the plaintiff's allegations are 'no more likely than any other potential scenario.'" *Bagley*, 492 F.3d at 328. Without evidentiary support for her claims, Levendis's speculative and conclusory allegations do not constitute a "positive showing" under the LMLA.[13] *See Ammon v. Dillard's Dept. Store No. 768*, No. 13-CV-764, 2015 WL 3860367, at *4 (M.D. La. June 22, 2015); *White*, 699 So. 2d at 1084.

---

[11] R. Doc. No. 47-5, at 7 ¶¶ 7–12. Levendis argues that the "Executive Brief" in Renfro's Incident Report "confirms" that Levendis slipped and fell on the lemon and water, *see* R. Doc. No. 52, at 3, but this section of the report begins with the categorization of an "Alleged Patron Injury," and the "Narrative" section of the report simply relays Levendis's description of the event as conveyed to Renfro. *See* R. Doc. No. 52-8, at 8–9.

[12] R. Doc. No. 47-5, at 8 ¶¶ 1–4.

[13] Although Levendis assumed that she stepped on the lemon slice and water, a claim that is relevant to the causation aspect of constructive notice, "'mere speculation or suggestion' is not sufficient" to meet her burden of proof under the LMLA. *Bagley*, 492 F.3d at 328 (*quoting Allen v. Wal–Mart Stores, Inc.*, 37,352 (La.App. 2 Cir. 6/25/03); 850 So. 2d 895, 898–99).

To prove constructive notice under the LMLA, courts have required specific evidence of the existence of a hazard prior to a slip and fall. *See Pollett v. Sears Roebuck*, 46 F. App'x 226, 226 (5th Cir. 2002) (affirming that plaintiff failed to prove constructive notice in the absence of evidence that allegedly hazardous puddle and mat "existed for some time prior to her fall"); *Kennedy v. Wal-Mart Stores, Inc.*, 98-1939 (La. 4/13/99); 733 So. 2d 1188, 1191 (holding that plaintiff failed to demonstrate constructive notice because plaintiff provided "absolutely no evidence as to the length of time the puddle was on the floor before his accident"); *Brown v. Jazz Casino Co., LLC*, 2018-0913 (La. App. 4 Cir. 5/1/19), 2019 WL 1938775, at *8–9 (finding appellant's "self-serving testimony in his deposition and a hearsay statement of a janitor," without additional evidence as to the cause of fall and length of time that the alleged condition existed, to be insufficient to prove constructive notice).

Levendis has also failed to demonstrate that the time period of the condition's existence was "sufficiently lengthy" for Jazz Casino to have constructive notice. *See White*, 699 So. 2d at 1084. Levendis argues that a couple who walked in front of her "may have spilled a drink shortly before" she slipped, and that "[t]his fact alone" proves the temporal element.[14] The video of the incident shows the couple walking ahead of Levendis less than thirty seconds before she fell. Even if the couple spilled liquid onto the floor that caused Levendis to slip, the Court finds that this fleeting period is an insufficient length of time for Jazz Casino to have exercised reasonable care to keep the area clear of hazards.

As an alternative explanation for the source of the water, Levendis alleges that a man who walked in front of the couple, "a minute at most" before them, possibly spilled his drink on the floor.[15] This man was observed on video by Renfro on the day

---

[14] R. Doc. No. 52, at 14. Levendis also argues that, according to *Lewis v. Jazz Casino Co., LLC*, 2017-0935 (La.App. 4 Cir. 4/26/18); 245 So.3d 68, a plaintiff may satisfy the temporal element of constructive notice by demonstrating that there was a period of "seconds" between a plaintiff's slip and fall and witness' observations of a foreign substance. However, the facts of *Lewis* are distinguishable from this matter. The *Lewis* court found that the plaintiff satisfied the temporal element because the plaintiff presented specific evidence that she slipped on a grape on the floor: multiple witnesses testified that they saw a "foreign substance," "little white stuff," or a substance resembling "melted cheese" on the floor and on the plaintiff's shoe. *Lewis*, 245 So.3d at 75. Furthermore, a witness who saw the plaintiff slip and fall told the plaintiff that she had slipped on a "smushed grape." *Id*. By contrast, no eyewitness observed Levendis slip and fall on a lemon slice and water. Furthermore, the lemon that Renfro observed after Levendis's fall appeared "intact" and did not appear that someone had stepped on it. *See* R. Doc. No. 47-5, at 7 ¶¶ 3–12. Renfro also observed that the water on the floor was not smeared. *See id*. at 8 ¶¶ 1–4.
[15] R. Doc. No. 52, at 14–15. According to her deposition, Renfro reviewed the video footage and observed this man walking "[m]aybe like a minute at most" ahead of the couple. *See* R. Doc. No. 52-10, at 7 ¶¶ 10–21.

8

of the accident, but footage of him was not presented to Levendis, as Jazz Casino did not preserve it. Notwithstanding the speculative nature of Levendis's claim as to this possible spill, the Court finds that a time period of approximately one and a half minutes is still not sufficient to demonstrate constructive notice. *See Courington v. Wal-Mart Louisiana LLC*, No. CV 2:17-00771, 2018 WL 707521, at *4 (W.D. La. Feb. 2, 2018) (concluding that "six minutes is not sufficient" to establish constructive notice); *Moses v. Wal-Mart Stores, Inc.*, 2017-566 (La. App. 3 Cir. 11/29/17), 258 So. 3d 184, 187 (finding that "one minute" between existence of spill and plaintiff's fall did not impose constructive notice); *Robinson v. Wal-Mart Stores, Inc.*, No. CV 15-1783, 2016 WL 5210711, at *6 (W.D. La. Sept. 15, 2016) (concluding that video evidence of water on floor for up to sixteen minutes was not sufficient period to impose constructive notice); *Nash v. Rouse's Enterprises, LLC*, 2015-1101 (La. App. 1 Cir. 2/26/16), 191 So. 3d 599, 602 (finding that ten minutes was not sufficient time period to establish constructive notice).

Considering the scarcity of available evidence with respect to the source of the lemon slice and water, Levendis futilely alleges that Jazz Casino intentionally destroyed video evidence in order to frustrate her ability to demonstrate constructive notice.[16] Specifically, Levendis points to Jazz Casino's failure to preserve footage of the man who walked ahead of the couple in the video that Levendis received in discovery.

---

[16] *See* R. Doc. No. 52, at 16.

9

To support a claim of spoliation of evidence, Levendis must establish that Jazz Casino acted in "bad faith," which the Fifth Circuit defines as "destruction for the purpose of hiding adverse evidence." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015). A party's duty to preserve evidence arises when the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant. *Id*. If the court finds a showing of bad faith, it may allow an adverse inference against the spoliator that the destroyed evidence supports the non-spoliator's claims. *King v. Ill. Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003); *see Kronisch v. United States*, 150 F.3d 112, 128 (2d Cir. 1998). Absent this showing, the plaintiff is "not entitled to rely on this inference to create an issue of fact on this claim." *King*, 337 F.3d at 556.

Levendis has not provided evidence that Jazz Casino acted in bad faith with respect to the video footage it did and did not preserve. The deposition of Paulette Wilson ("Wilson"), the Jazz Casino surveillance agent who reviewed the full video footage after the incident occurred, presented her reasons for retaining surveillance video that began only twenty seconds before Levendis's fall. According to Wilson, Jazz Casino determines the cut-off point for video retention based on the point at which the video "shows something happened."[17] Wilson explained that she downloaded only twenty seconds of the video prior to Levendis's fall because she believed that the woman in the couple who walked ahead of Levendis spilled her drink on the floor.[18]

---

[17] R. Doc. No. 61-3, at 4 ¶ 19.
[18] *See id*. at 30 ¶¶ 9–23.

10

Although she did not preserve "upwards" of fifteen minutes of video before Levendis's fall, as suggested by Jazz Casino policy, Wilson thought it was "responsible" to start the video at that point because, as she stated, "when I watched the video, I assumed the patrons that were walking ahead caused the accident."[19]

Jazz Casino's policy regarding day-to-day video recordings is to maintain footage for seven days.[20] Video that is not downloaded within that time period is taped over.[21] As part of her spoliation allegation, Levendis argues that Jazz Casino's decision to retain video footage starting only twenty seconds before her fall was made in bad faith and violated its duty to preserve evidence. However, Levendis did not send her letter to preserve evidence to Jazz Casino until over two months after the incident occurred.[22] Per Jazz Casino policy, day-to-day video recordings are taped over after seven days; therefore, any footage of the man who walked in front of the couple would have been taped over as part of Jazz Casino's routine operations. Levendis did receive the footage recording her fall that Wilson downloaded, per Levendis's request. Based on the record, Levendis has not demonstrated that Jazz Casino acted in bad faith with respect to evidence preservation.

---

[19] *Id.* at 30, ¶¶ 18–23. Jazz Casino did preserve nearly an hour of video surveillance of Levendis after she fell, which includes footage of employees providing her with medical care and Emergency Medical Services professionals transporting her into an ambulance.

[20] R. Doc. No. 61-4, at 3 ¶¶ 16–22.

[21] *Id.*

[22] *See* R. Doc. No. 52, at 5. Levendis's letter, sent on March 23, 2018, requested that Jazz Casino take "immediate action to preserve ALL evidence that is or could be related to this matter." R. Doc. No. 52-12, at 3. Levendis has not presented any evidence that Jazz Casino did not comply with this request in providing her with the surveillance footage that it had retained after it received Levendis's letter.

11

Furthermore, even if the video had been preserved a minute or two longer to include this individual, Levendis would still fail to meet her burden to prove constructive notice. The spilling of his drink as the cause of Levendis's slip and fall is speculative, and the proximity of time between the alleged spill and her fall is insufficient to satisfy the temporal element.

V.

Based on a review of the evidence presented, the Court finds that Levendis has failed to come forward with specific facts relative to her claims against the defendant. Even when viewed in the light most favorable to Levendis, she has failed to prove essential elements of her claim.

Accordingly,

**IT IS ORDERED** that the motion is **GRANTED** and that Levendis's claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, August 6, 2019.

                                **LANCE M. AFRICK**
                              **UNITED STATES DISTRICT JUDGE**